UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:                        )
                              )
DARRIN A. STAVNESLI,          )   Case No. 12-11126
                              )        Chapter 7
        Debtor                )

## TRUSTEE'S MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS

Michael S. Haenn, Chapter 7 Trustee for this case, moves this Court for an Order and for this Court's authority to sell property of the estate free and clear of all liens, claims, interests, pursuant to 11 U.S.C. § 363(b),(f), Fed.R.Bankr.P. 6004(c), and D.Me.LBR 6004-1. In support of this Motion the Trustee states as follows:

1.  The Trustee seeks to sell certain real property situated generally at 3326 NW Ninth Street, Cape Coral, Florida, and more particularly described in the deed of Vincent Campanella et al. to the Debtor and Ellen A. Stavnesli ("Co-owner") dated April 23, 2005 and recorded with the Lee County Clerk of Courts at Book 4719, Page 1242 ("the Property"). The Property is a vacant lot.

2.  The Trustee has obtained the authority of this Court to employ a real estate broker to sell the Property by an Order dated March 1, 2013.

3.  The broker has received an offer to purchase the Property for the gross sum of $12,000.00, which the Trustee believes to be a fair offer. The offer is reflected in the Contract annexed hereto as Exhibit A.

4.  Although multiple attempts have been made to obtain the cooperation of the Co-owner in the sale of the Property, it is readily apparent that she has no intent to cooperate in the sale of, and will not consent to the sale of, the Property.

5.  Without an Order of this Court the Trustee will be unable to fulfill his responsibility as Chapter 7 trustee and the interests of the Debtor in the Property (all of which constitutes non-exempt property of the estate) will not be realized.

6.  The Trustee requests, pursuant to 11 U.S.C. § 363(f)(5), that the sale of the Property be free and clear of all liens, claims, and interests, with all such liens, claims, and interests

attaching to the net sale proceeds in the same order of their priority that they now have against the Property.[1]

7. The Trustee, in his business discretion, believes that the proposed sale is in the best interests of creditors and the estate in this case.

8. The Trustee further requests that the Notice of Intended Sale ("the Sale Notice") be served by the Clerk to the U.S. Trustee, counsel for Debtor, all entities known to have expressed an interest in a transaction with respect to the Property (if any), all parties known to claim or assert a lien on the Property (if any), all creditors of the Debtor and the estate, and all entities who have filed a notice of appearance and request for service of papers in this case.

WHEREFORE, Michael S. Haenn, Chapter 7 Trustee, requests that this Court enter an Order authorizing the Trustee to sell the Property free and clear of all liens, claims, and interests, and that the Court grant the Trustee such other and further relief as the Court deems appropriate.

Dated: April 24, 2013

/s/ Michael S. Haenn
Michael S. Haenn
Chapter 7 Trustee
88 Hammond Street, 3rd Floor
P.O. Box 915
Bangor, Maine   04402-0915
michael.haenn@7trustee.net

---

[1] Such liens, claims, and interests shall remain subject to all the Trustee's rights, remedies, claims, defenses, offsets, demands, causes of action, and objections.

EXHIBIT A

## Vacant Land Contract

**PARTIES AND DESCRIPTION OF PROPERTY**

1. **SALE AND PURCHASE:** MICHAEL HAENN CHAPTER 7 BANKRUPTCY ESTATE OF DARRIN A STAVNESLI ("Seller")
and EDWARD J WISNIEFSKI AND LINDA J WISNIEFSKI ("Buyer")
agree to sell and buy on the terms and conditions specified below the property ("Property") described as:
Address: 3326 NW 9TH STREET, CAPE CORAL, FLORIDA 33993
Legal Description: CAPE CORAL UNIT 60 BLK 4202 PB 19 PG 157 LOTS 27 THRU 29

Including all improvements and the following additional property: NONE

**PRICE AND FINANCING**

2. **PURCHASE PRICE:** $ 12,000 payable by Buyer in U.S. funds as follows:

(a) $ _____ Deposit received (checks are subject to clearance) on _____ by _____ for delivery to _____ ("Escrow Agent")
(Address of Escrow Agent) CAPE CORAL TITLE INSURANCE AGENCY INC
(Phone # of Escrow Agent) 239-540-1555 - STEVE MERKLE

(b) $ 500 Additional deposit to be delivered to Escrow Agent by _____ or 3 days from Effective Date (10 days if left blank).

(c) _____ Total financing (see Paragraph 3 below) (express as a dollar amount or percentage)

(d) $ _____ Other: _____

(e) $ 11,500 Balance to close (not including Buyer's closing costs, prepaid items and prorations). All funds paid at closing must be paid by locally drawn cashier's check, official check or wired funds.

☐ (f) (complete only if purchase price will be determined based on a per unit cost instead of a fixed price) The unit used to determine the purchase price is ☐ lot ☐ acre ☐ square foot ☐ other (specify: _____) prorating areas of less than a full unit. The purchase price will be $ _____ per unit based on a calculation of total area of the Property as certified to Buyer and Seller by a Florida-licensed surveyor in accordance with Paragraph 8(c) of this Contract. The following rights of way and other areas will be excluded from the calculation: _____

3. **CASH/FINANCING:** (Check as applicable) [X] (a) Buyer will pay cash for the Property with no financing contingency.
☐ (b) This Contract is contingent on Buyer qualifying and obtaining the commitment(s) or approval(s) specified below (the "Financing") within _____ days from Effective Date (if left blank then Closing Date or 30 days from Effective Date, whichever occurs first) (the "Financing Period"). Buyer will apply for Financing within _____ days from Effective Date (5 days if left blank) and will timely provide any and all credit, employment, financial and other information required by the lender. If Buyer, after using diligence and good faith, cannot obtain the Financing within the Financing Period, either party may cancel this Contract and Buyer's deposit(s) will be returned after Escrow Agent receives proper authorization from all interested parties.
☐ (1) New Financing: Buyer will secure a commitment for new third party financing for $ _____ or _____% of the purchase price at the prevailing interest rate and loan costs based on Buyer's creditworthiness. Buyer will keep Seller and Broker fully informed of the loan application status and progress and authorizes the lender or mortgage broker to disclose all such information to Seller and Broker.
☐ (2) Seller Financing: Buyer will execute a ☐ first ☐ second purchase money note and mortgage to Seller in the amount of $ _____, bearing annual interest at _____% and payable as follows: _____

The mortgage, note, and any security agreement will be in a form acceptable to Seller and will follow forms generally accepted in the county where the Property is located; will provide for a late payment fee and acceleration at the mortgagee's

Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 1 of 7 Pages.
Rev. 4/07 © 2007 Florida Association of Realtors®  All Rights Reserved

Serial#: 045412-100150-4260083

51 option if Buyer defaults; will give Buyer the right to prepay without penalty all or part of the principal at any time(s) with
52 interest only to date of payment; will be due on conveyance or sale; will provide for release of contiguous parcels, if
53 applicable; and will require Buyer to keep liability insurance on the Property, with Seller as additional named insured. Buyer
54 authorizes Seller to obtain credit, employment and other necessary information to determine creditworthiness for the
55 financing. Seller will, within 10 days from Effective Date, give Buyer written notice of whether or not Seller will make the loan.
56* ☐ (3) Mortgage Assumption: Buyer will take title subject to and assume and pay existing first mortgage to _____
57*
58* LN# _____ in the approximate amount of $_____ currently payable at
59* $_____ per month including principal, interest, ☐ taxes and insurance and having a ☐ fixed ☐ other
60* (describe) _____
61* Interest rate of _____% which ☐ will ☐ will not escalate upon assumption. Any variance in the mortgage will be
62 adjusted in the balance due at closing with no adjustment to purchase price. Buyer will purchase Seller's escrow
63* account dollar for dollar. If the lender disapproves Buyer, or the interest rate upon transfer exceeds _____% or the
64* assumption/transfer fee exceeds $_____, either party may elect to pay the excess, failing which this agreement
65 will terminate and Buyer's deposit(s) will be returned.

66 **CLOSING**
67 **4. CLOSING DATE; OCCUPANCY:** This Contract will be closed and the deed and possession delivered on ___May 24___,
68* ___2013___ ("Closing Date"). Unless the Closing Date is specifically extended by the Buyer and Seller or by any other provision in this
69 Contract, the Closing Date shall prevail over all other time periods including, but not limited to, financing and feasibility study
70 periods. If on Closing Date insurance underwriting is suspended, Buyer may postpone closing up to 5 days after the insurance
71 suspension is lifted. If this transaction does not close for any reason, Buyer will immediately return all Seller-provided title
72 evidence, surveys, association documents and other items.

73 **5. CLOSING PROCEDURE; COSTS:** Closing will take place in the county where the Property is located and may be conducted by
74 mail or electronic means. If title insurance insures Buyer for title defects arising between the title binder effective date and
75 recording of Buyer's deed, closing agent will disburse at closing the net sale proceeds to Seller (in local cashier's checks if Seller
76 requests in writing at least 5 days prior to closing) and brokerage fees to Broker as per Paragraph 17. In addition to other expenses
77 provided in this Contract, Seller and Buyer will pay the costs indicated below.
78 (a) **Seller Costs:**
79 Taxes on the deed
80 Recording fees for documents needed to cure title
81 Title evidence (if applicable under Paragraph 8)
82* Other: _____
83 (b) **Buyer Costs:**
84 Taxes and recording fees on notes and mortgages
85 Recording fees on the deed and financing statements
86 Loan expenses
87 Lender's title policy at the simultaneous issue rate
88 Inspections
89 Survey and sketch
90 Insurance
91* Other: _____
92 (c) **Title Evidence and Insurance: Check (1) or (2):**
93* ☒ (1) The title evidence will be a Paragraph 8(a)(1) owner's title insurance commitment ☐ Seller will select the title agent and
94* will pay for the owner's title policy, search, examination and related charges or ☒ Buyer will select the title agent and pay for
95* the owner's title policy, search, examination and related charges or ☐ Buyer will select the title agent and Seller will pay for
96 the owner's title policy, search, examination and related charges.
97* ☐ (2) Seller will provide an abstract as specified in Paragraph 8(a)(2) as title evidence. ☐ Seller ☐ Buyer will pay for the
98 owner's title policy and select the title agent. Seller will pay fees for title searches prior to closing, including tax search and
99 lien search fees, and Buyer will pay fees for title searches after closing (if any), title examination fees and closing fees.
100 (d) **Prorations:** The following items will be made current and prorated as of the day before Closing Date: real estate taxes,
101 interest, bonds, assessments, leases and other Property expenses and revenues. If taxes and assessments for the current year
102 cannot be determined, the previous year's rates will be used with adjustment for any exemptions. PROPERTY TAX
103 DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF
104 PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF
105 OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
106 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S
107 OFFICE FOR FURTHER INFORMATION.
108 (e) **Special Assessment by Public Body:** Regarding special assessments imposed by a public body, Seller will pay (i) the full
109 amount of liens that are certified, confirmed and ratified before closing and (ii) the amount of the last estimate of the assessment
110* Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 7 Pages.
Rev. 4/07 © 2007 Florida Association of Realtors® All Rights Reserved

111  if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing, and Buyer will
112  pay all other amounts. If special assessments may be paid in installments ☐ Buyer ☒ Seller (if left blank, Buyer) shall pay
113  installments due after closing. If Seller is checked, Seller will pay the assessment in full prior to or at the time of closing. Public
114  body does not include a Homeowner Association or Condominium Association.
115  **(f) Tax Withholding:** If Seller is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires
116  Buyer to withhold 10% of the amount realized by the Seller on the transfer and remit the withheld amount to the Internal
117  Revenue Service (IRS) unless an exemption applies. The primary exemptions are (1) Seller provides Buyer with an affidavit
118  that Seller is not a "foreign person", (2) Seller provides Buyer with a Withholding Certificate providing for reduced or
119  eliminated withholding, or (3) the gross sales price is $300,000 or less, Buyer is an individual who purchases the Property to
120  use as a residence, and Buyer or a member of Buyer's family has definite plans to reside at the Property for at least 50% of the
121  number of days the Property is in use during each of the first two 12 month periods after transfer. The IRS requires Buyer and
122  Seller to have a U.S. federal taxpayer identification number ("TIN"). Buyer and Seller agree to execute and deliver as directed
123  any instrument, affidavit or statement reasonably necessary to comply with FIRPTA requirements including applying for a TIN
124  within 3 days from Effective Date and delivering their respective TIN or Social Security numbers to the Closing Agent. If Seller
125  applies for a withholding certificate but the application is still pending as of closing, Buyer will place the 10% tax in escrow at
126  Seller's expense to be disbursed in accordance with the final determination of the IRS, provided Seller so requests and gives
127  Buyer notice of the pending application in accordance with Section 1445. If Buyer does not pay sufficient cash at closing to
128  meet the withholding requirement, Seller will deliver to Buyer at closing the additional cash necessary to satisfy the
129  requirement. Buyer will timely disburse the funds to the IRS and provide Seller with copies of the tax forms and receipts.
130  **(g) 1031 Exchange:** If either Seller or Buyer wishes to enter into a like-kind exchange (either simultaneously with closing or
131  after) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party will cooperate in all reasonable respects to
132  effectuate the Exchange including executing documents; provided, however, that the cooperating party will incur no liability or
133  cost related to the Exchange and that the closing shall not be contingent upon, extended or delayed by the Exchange.

134                              **PROPERTY CONDITION**
135  **6. LAND USE:** Seller will deliver the Property to Buyer at the time agreed in its present "as is" condition, with conditions
136  resulting from Buyer's inspections and casualty damage, if any, excepted. Seller will maintain the landscaping and grounds in
137  a comparable condition and will not engage in or permit any activity that would materially alter the Property's condition without
138  the Buyer's prior written consent.
139  **(a) Flood Zone:** Buyer is advised to verify by survey, with the lender and with appropriate government agencies which flood
140  zone the Property is in, whether flood insurance is required and what restrictions apply to improving the Property and
141  rebuilding in the event of casualty.
142  **(b) Government Regulation:** Buyer is advised that changes in government regulations and levels of service which affect
143  Buyer's intended use of the Property will not be grounds for canceling this Contract if the Feasibility Study Period has expired
144  or if Buyer has checked choice (c)(2) below.
145  **(c) Inspections:** *(check (1) or (2) below)*
146  ☐ **(1) Feasibility Study:** Buyer will, at Buyer's expense and within _____ days from Effective Date ("Feasibility Study
147  Period"), determine whether the Property is suitable, in Buyer's sole and absolute discretion, for _____
148  _____ use. During the Feasibility Study Period, Buyer may conduct a Phase I environmental
149  assessment and any other tests, analyses, surveys and investigations ("Inspections") that Buyer deems necessary to
150  determine to Buyer's satisfaction the Property's engineering, architectural and environmental properties; zoning and
151  zoning restrictions; subdivision statutes; soil and grade; availability of access to public roads, water, and other utilities;
152  consistency with local, state and regional growth management plans; availability of permits, government approvals, and
153  licenses; and other inspections that Buyer deems appropriate to determine the Property's suitability for the Buyer's
154  intended use. If the Property must be rezoned, Buyer will obtain the rezoning from the appropriate government agencies.
155  Seller will sign all documents Buyer is required to file in connection with development or rezoning approvals.

156  Seller gives Buyer, its agents, contractors and assigns, the right to enter the Property at any time during the Feasibility
157  Study Period for the purpose of conducting Inspections; provided, however, that Buyer, its agents, contractors and
158  assigns enter the Property and conduct Inspections at their own risk. Buyer will indemnify and hold Seller harmless
159  from losses, damages, costs, claims and expenses of any nature, including attorneys' fees, expenses and liability
160  incurred in application for rezoning or related proceedings, and from liability to any person, arising from the conduct of
161  any and all inspections or any work authorized by Buyer. Buyer will not engage in any activity that could result in a
162  construction lien being filed against the Property without Seller's prior written consent. If this transaction does not
163  close, Buyer will, at Buyer's expense, (1) repair all damages to the Property resulting from the Inspections and return
164  the Property to the condition it was in prior to conduct of the Inspections, and (2) release to Seller all reports and other
165  work generated as a result of the Inspections.

166  Buyer will deliver written notice to Seller prior to the expiration of the Feasibility Study Period of Buyer's determination of
167  whether or not the Property is acceptable. Buyer's failure to comply with this notice requirement will constitute acceptance
168  of the Property as suitable for Buyer's intended use in its "as is" condition. If the Property is unacceptable to Buyer and
169  written notice of this fact is timely delivered to Seller, this Contract will be deemed terminated as of the day after the
170  Feasibility Study period ends and Buyer's deposit(s) will be returned after Escrow Agent receives proper authorization from
171  all interested parties.
172  ☒ **(2) No Feasibility Study:** Buyer is satisfied that the Property is suitable for Buyer's purposes, including being
173  satisfied that either public sewerage and water are available to the Property or the Property will be approved for the

174 Buyer (_____) and Seller (_____)(_____) acknowledge receipt of a copy of this page, which is Page 3 of 7 Pages.
Rev. 4/07 © 2007 Florida Association of Realtors® All Rights Reserved

Serial#: 045412-100135-4260855

238 holiday, performance will be due the next business day. All time periods will end at 5:00 p.m. local time (meaning in the county
239 where the Property is located) of the appropriate day.
240 (c) Force Majeure: Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to
241 each other for damages so long as the performance or non-performance of the obligation is delayed, caused or prevented
242 by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire,
243 unusual transportation delays, wars, insurrections and any other cause not reasonably within the control of the Buyer or
244 Seller and which by the exercise of due diligence the non-performing party is unable in whole or in part to prevent or
245 overcome. All time periods, including Closing Date, will be extended (not to exceed 30 days) for the period that the force
246 majeure or act of God is in place. In the event that such "act of God" or "force majeure" event continues beyond the 30
247 days in this sub-paragraph, either party may cancel the Contract by delivering written notice to the other and Buyer's
248 deposit shall be refunded.

249 **10. NOTICES:** All notices shall be in writing and will be delivered to the parties and Broker by mail, personal delivery or electronic
250 media. Buyer's failure to deliver timely written notice to Seller, when such notice is required by this Contract, regarding
251 any contingencies will render that contingency null and void and the Contract will be construed as if the contingency did
252 not exist. Any notice, document or item delivered to or received by an attorney or licensee (including a transaction
253 broker) representing a party will be as effective as if delivered to or by that party.

254 **11. COMPLETE AGREEMENT:** This Contract is the entire agreement between Buyer and Seller. Except for brokerage
255 agreements, no prior or present agreements will bind Buyer, Seller or Broker unless incorporated into this Contract.
256 Modifications of this Contract will not be binding unless in writing, signed or initialed and delivered by the party to be bound. This
257 Contract, signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated
258 electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten
259 terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid
260 or unenforceable, all remaining provisions will continue to be fully effective. Buyer and Seller will use diligence and good faith in
261 performing all obligations under this Contract. This Contract will not be recorded in any public records.

262 **12. ASSIGNABILITY; PERSONS BOUND:** Buyer may not assign this Contract without Seller's written consent. The terms
263 "Buyer," "Seller," and "Broker" may be singular or plural. This Contract is binding on the heirs, administrators, executors, personal
264 representatives and assigns (if permitted) of Buyer, Seller and Broker.

265 **DEFAULT AND DISPUTE RESOLUTION**
266 **13. DEFAULT: (a) Seller Default:** If for any reason other than failure of Seller to make Seller's title marketable after diligent
267 effort, Seller fails, refuses or neglects to perform this Contract, Buyer may choose to receive a return of Buyer's deposit without
268 waiving the right to seek damages or to seek specific performance as per Paragraph 14. Seller will also be liable to Broker for the
269 full amount of the brokerage fee. **(b) Buyer Default:** If Buyer fails to perform this Contract within the time specified, including
270 timely payment of all deposits, Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated
271 damages or to seek specific performance as per Paragraph 14; and Broker will, upon demand, receive 50% of all deposits paid
272 and agreed to be paid (to be split equally among Brokers) up to the full amount of the brokerage fee.

273 **14. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims, and other matters in
274 question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
275 (a) **Disputes concerning entitlement to deposits made and agreed to be made:** Buyer and Seller will have 30 days from
276 the date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent will
277 submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the Florida Real
278 Estate Commission ("FREC"). Buyer and Seller will be bound by any resulting award, judgment or order. A broker's obligation
279 under Chapter 475, FS and the FREC rules to timely notify the FREC of an escrow dispute and timely resolve the escrow
280 dispute through mediation, arbitration, interpleader, or an escrow disbursement order, if the broker so chooses, applies only
281 to brokers and does not apply to title companies, attorneys or other escrow companies.
282 (b) **All other disputes:** Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve
283 the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the
284 county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not provided for
285 in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact and the
286 contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the Florida Rules
287 of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real estate licensee named
288 in Paragraph 17 will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the
289 proceeding. This clause will survive closing.
290 (c) **Mediation and Arbitration; Expenses:** "Mediation" is a process in which parties attempt to resolve a dispute by
291 submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a
292 settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA") or
293 other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in
294 which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is
295 binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the parties.
296 Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally split the
297 arbitrators' fees and administrative fees of arbitration. In a civil action to enforce an arbitration award, the prevailing party to
298 the arbitration shall be entitled to recover from the nonprevailing party reasonable attorneys' fees, costs and expenses.

299 Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 5 of 7 Pages.
Rev. 4/07 © 2007 Florida Association of Realtors® All Rights Reserved

Serial: 048412-100138-4280885

### ESCROW AGENT AND BROKER

**15. ESCROW AGENT:** Buyer and Seller authorize Escrow Agent to receive, deposit and hold funds and other items in escrow and, subject to clearance, disburse them upon proper authorization and in accordance with Florida law and the terms of this Contract, including disbursing brokerage fees. The parties agree that Escrow Agent will not be liable to any person for misdelivery of escrowed items to Buyer or Seller, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence. ~~If Escrow Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing fees and costs from the deposit and will recover reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party. All claims against Escrow Agent will be arbitrated, so long as Escrow Agent consents to arbitrate.~~

**16. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify all facts and representations that are important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts, determining the effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, the effect of property lying partially or totally seaward of the Coastal Construction Control Line, etc.) and for tax, property condition, environmental and other specialized advice. Buyer acknowledges that Broker does not reside in the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. Buyer agrees to rely solely on Seller, professional inspectors and governmental agencies for verification of the Property condition and facts that materially affect Property value. Buyer and Seller respectively will pay all costs and expenses, including reasonable attorneys' fees at all levels, incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from Buyer's or Seller's misstatement or failure to perform contractual obligations. Buyer and Seller hold harmless and release Broker and Broker's officers, directors, agents and employees from all liability for loss or damage based on (1) Buyer's or Seller's misstatement or failure to perform contractual obligations; (2) Broker's performance, at Buyer's and/or Seller's request, of any task beyond the scope of services regulated by Chapter 475, F.S. as amended, including Broker's referral, recommendation or retention of any vendor; (3) products or services provided by any vendor; and (4) expenses incurred by any vendor. Buyer and Seller each assume full responsibility for selecting and compensating their respective vendors. This paragraph will not relieve Broker of statutory obligations. For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

**17. BROKERS:** The licensee(s) and brokerage(s) named below are collectively referred to as "Broker." **Instruction to Closing Agent:** Seller and Buyer direct closing agent to disburse at closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the brokers, except to the extent Broker has retained such fees from the escrowed funds. In the absence of such brokerage agreements, closing agent will disburse brokerage fees as indicated below. This paragraph will not be used to modify any MLS or other offer of compensation made by Seller or listing broker to cooperating brokers.

| SANDRA THIBODEAU | SWFL REALTY GROUP |
|---|---|
| Selling Sales Associate/License No. 3044355 | Selling Firm/Brokerage Fee ($ or % of Purchase Price) 5% |
| SANDRA THIBODEAU | SWFL REALTY GROUP |
| Listing Sales Associate/License No. 3044355 | Listing Firm/Brokerage Fee ($ or % of Purchase Price) 5% |

### ADDITIONAL TERMS

**18. ADDITIONAL TERMS:** buyer understands that this property is being handled by Michael S Haenn, Esq. Chapter 7 Trustee, Debtor Darrin A. Stavnesil, Case No. 12-11126 Chapter 7, United States Bankruptcy Court District of Maine, It may take longer then May 24, 2013 to close.

Buyer does understand that the agreement of the seller/Trustee to this contract is entirely dependent upon the authority provided to him by the U.S. Bankruptcy Court (D.Me.), which authority is limited to any Court Order issued by said Court; and that the Trustee acts solely in such a representative capacity.

Buyer _____ and Seller _____ acknowledge receipt of a copy of this page, which is Page 6 of 7 Pages.
Rev. 4/07 © 2007 Florida Association of Realtors® All Rights Reserved

Serial: 046412-100138-4260865

```
359*
360*
361*
362*
363*
364*
365*
366*
367*
368*
369*
370*
371*
372*
373*
374*
375*
```

376 This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

377 **OFFER AND ACCEPTANCE**
378* (Check if applicable: ☐ Buyer received a written real property disclosure statement from Seller before making this Offer.)
379 Buyer offers to purchase the Property on the above terms and conditions. Unless this Contract is signed by Seller and a
380* copy delivered to Buyer no later than __5:00__ ☐ a.m. ☒ p.m. on __May 23__, __2013__ this offer will be
381 revoked and Buyer's deposit refunded subject to clearance of funds.

_EJW 4/18/1:_
_LJW - 4/18/1_

382 **COUNTER OFFER/REJECTION**
383* ☐ Seller counters Buyer's offer (to accept the counter offer, Buyer must sign or initial the counter offered terms and deliver a
384 copy of the acceptance to Seller. Unless otherwise stated, the time for acceptance of any counteroffers shall be 2 days from
385* the date the counter is delivered. ☐ Seller rejects Buyer's offer.

386* Date: __3/26/13__ Buyer: _Edw J Wisniefski_
387* Print name: EDWARD J WISNIEFSKI

388* Date: __3/26/13__ Buyer: _Linda J. Wisniefski_
389* Phone: _____ Print name: LINDA J WISNIEFSKI
390* Fax: _____ Address: CAPE CORAL, FLORIDA
391* E-mail: _____

392* Date: __4/18/13__ Seller: _____
393* Print name: _MICHAEL R HOGAN, Chapter 7 Trustee_
           _Case # 12-11126 Darryl Hannah(?)_

394* Date: _____ Seller: _____
395* Phone: _____ Print name: _____
396* Fax: _____ Address: _____
397* E-mail: _____

398* | Effective Date: _____ (The date on which the last party signed or initialed and delivered the final offer or counteroffer.) |

399* Buyer (_EJW/LJW_) and Seller (_MH_) (___) acknowledge receipt of a copy of this page, which is Page 7 of 7 Pages.

The Florida Association of Realtors and local Board/Association of Realtors make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a Realtor. Realtor is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of Realtors and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.
Rev. 4/07 © 2007 Florida Association of Realtors® All Rights Reserved

Serial: 048412-100135-4250065

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF MAINE

In re:                          )
                                )
DARRIN A. STAVNESLI,            )    Case No. 12-11126
                                )         Chapter 7
         Debtor                 )
```

## NOTICE OF MOTION AND HEARING

**PLEASE TAKE NOTICE THAT**, pursuant to 11 U.S.C. §§ 105, 363, Fed.R.Bankr.P 2002, 6004, and 9013, and D.Me.LBR 2002-1(a)(1), 6004-1, and 9013-1(a), Michael S. Haenn, Chapter 7 Trustee ("the Trustee"), intends to sell the estate's interest in real property situated generally at 3326 NW Ninth Street, Cape Coral, Florida, and more particularly described in the deed of Vincent Campanella et al. to the Debtor and Ellen A. Stavnesli ("Co-owner") dated April 23, 2005 and recorded with the Lee County Clerk of Courts at Book 4719, Page 1242 ("the Property").  The Property is a vacant lot.

The sale by the Trustee shall be free and clear of all liens, claims, and interests, with all such liens, claims, and interests attaching to the net sale proceeds in the order of their priority, with the same validity, force, and effect that they now have as against the estate's interest in the Property, subject to all available rights, remedies, claims, defenses, offsets, demands, causes of action, and objections.  The Trustee is not aware of any valid liens, claims or encumbrances on the Property.

Any objections to the proposed Trustee's sale must be made in writing on or before May 20, 2013, and be filed with the U.S. Bankruptcy Court at 202 Harlow Street, 3rd Floor, Bangor, ME 04401, with a copy to the Trustee at:  Michael S. Haenn, Chapter 7 Trustee, P.O. Box 915, Bangor, ME 04402-0915, and received by the Trustee on or before May 20, 2013.

You may attend the hearing on the Trustee's Motion to Sell Property Free and Clear of Liens, Claims, and Interests which will be held on June 13, 2013 at 10:00 a.m., at the U.S. Bankruptcy Court, 202 Harlow Street, Bangor, Maine 04401.  The hearing may be postponed or rescheduled from time to time, without further notice, except as may be provided at the hearing.

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)

Absent a timely written objection, the Trustee's sale may be approved by the Bankruptcy Court without further notice or hearing.

Dated: April 24, 2013    /s/ Michael S. Haenn
Michael S. Haenn
Chapter 7 Trustee
88 Hammond Street, 3rd Floor
P. O. Box 915
Bangor, Maine 04402-0915

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:                          )
                                )
DARRIN A. STAVNESLI,            )    Case No. 12-11126
                                )         Chapter 7
       Debtor                   )

## CERTIFICATE OF SERVICE

    I, Michael S. Haenn, Esq., Chapter 7 Trustee, do hereby certify that I have this same date served a true and correct copy of the Motion to Sell Property Free and Clear of Liens, Claims and Interests, Notice of Motion and Hearing and proposed Order dated April 24, 2013 and, on each of the parties and at the addresses set forth hereinbelow via first-class mail and properly sealed, stamped and addressed:

| | |
|---|---|
| U.S. Trustee | served electronically<br>ustpregion01.po.ecf@usdoj.gov |
| Perry O'Brian, Esq.<br>Debtor's Counsel | served electronically<br>obrianpa@roadrunner.com |
| Christine E. Johnson, Esq.<br>Counsel for U.S. Bank<br>National Association | served electronically<br>bkecf@bmpc-law.com |

Darrin A. Stavnesli
P.O. Box 131
Bangor, ME 04402-0131

Sandra J. Thibodeau / SWFL Realty Group
1326 Cape Coral Parkway E Unit 2
Cape Coral, FL 33904

| | | |
|---|---|---|
| Bangor Federal Credit Union<br>P.O. Box 1161<br>Bangor, ME 04402-1161 | Bangor Hydro Electric Co.<br>Attn: Nathan J. Martell, Esq.<br>P.O. Box 932<br>Bangor, ME 04402-0932 | Bank Of America<br>P.O. Box 982235<br>El Paso, TX 79998-2235 |
| Bendett & McHugh<br>270 Farmington Ave., Ste. 151<br>Farmington, CT 06032-1926 | Bsi Financial Services<br>A Commom Wealth Place<br>P.O. Box 517<br>Titusville, PA 16354-0517 | CBCS<br>236 East Town Street<br>P.O. Box 164089<br>Columbus, OH 43216-4089 |
| Capital One Bank<br>P.O. Box 30285<br>Salt Lake City, UT 84130-0285 | Discover Bank<br>DB Servicing Corporation<br>P.O. Box 3025<br>New Albany, OH 43054-3025 | Discover Fin Svcs Llc<br>P.O. Box 15316<br>Wilmington, DE 19850-5316 |

| | | |
|---|---|---|
| Ellen Stavnesli<br>c/o Christmas Vacation Shop<br>110 Main Street<br>Bar Harbor, ME 04609-1873 | Emerge<br>P.O. Box 105555<br>Atlanta, GA 30348-5555<br>Emerson Energy Fuels<br>234 Main Street<br>Ellsworth, ME 04605-1612 | Equable Ascent Financial<br>1120 W Lake Cook Rd<br>Buffalo Grove, IL 60089-1970 |
| Fairpoint Communications<br>521 East Morehead Street<br>Charlotte, NC 28202-2631 | Fairpoint Communications<br>P.O. Box 11021<br>Lewiston, ME 04243-9472 | Fnb Omaha<br>P.O. Box 3412<br>Omaha, NE 68197-0001 |
| G M Pollack & Sons Jewelers<br>600 Roundwood Drive<br>Scarborough, ME 04074-8247 | GE Capital Retail Bank<br>Attn: Bankruptcy Dept.<br>P.O. Box 103104<br>Roswell, GA 30076-9104 | GECRB/Lowes<br>P.O. Box 103065<br>Roswell, GA 30076 |
| Kay Jewelers<br>375 Ghent Rd<br>Fairlawn, OH 44333-4600 | Mercantile Adjustment Bureau<br>6341 Inducon Drive East<br>Sanborn, NY 14132-9097 | NuView Financial Services<br>7505 Irvine Center Drive<br>Irvine, CA 92618-2991 |
| Penobscot Community Health Center<br>Attn: Billing Dept<br>P.O. Box 1599<br>Bangor, ME 04402-1599 | Susan Snyder, Esq.<br>P.O. Box 123<br>Bass Harbor, ME 04653-0123 | Susan Szwed, Esq.<br>PMB 815<br>P.O. Box 9715<br>Portland, ME 04104-5015 |
| Thd/Cbna<br>P.O. Box 6497<br>Sioux Falls, SD 57117-6497 | VIP #41<br>24 Downeast Highway<br>Ellsworth, ME 04605-1731 | Wells Fargo Bank Nv Na<br>P.O. Box 31557<br>Billings, MT 59107-1557 |
| Wells Fargo Bank NA<br>Wells Fargo Home Mortgage<br>Americas Servicing<br>Attn: Bankruptcy Dept.<br>MAC X7801-014<br>3476 Stateview Blvd<br>Fort Mill, SC 29715-7203 | Wffnatbank<br>P.O. Box 94498<br>Las Vegas, NV 89193-4498 | Wffnb/Rooms To Go<br>P.O. Box 94498<br>Las Vegas, NV 89193-4498 |

Dated: April 24, 2013        /s/ Michael S. Haenn
                             Michael S. Haenn
                             Chapter 7 Trustee
                             88 Hammond Street, 3rd Floor
                             P. O. Box 915
                             Bangor, Maine   04402-0915